**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RACHAEL ELLA BASS,**

        **Plaintiff,**

**-vs-**                                                                                              **Case No.  6:13-cv-1331-Orl-22DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**
_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## I.     BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on December 15, 2008, alleging an onset of disability on March 24, 2008, due to injuries to her back, neck, and hands, in addition to mental health impairments.  R. 175-81, 210.  Her application was denied initially and upon

reconsideration. R. 107-18. Plaintiff requested a hearing, the first of which was held on August 20, 2010 before Administrative Law Judge Janet Mahon (hereinafter referred to as "ALJ"). R. 37-32. Plaintiff timely filed a Request for Review of the ALJ's decision, which the AC granted and remanded the case to the ALJ on April 11, 2012, directing the ALJ to clarify Plaintiff's residual functional capacity and past work experience. R. 105. To that end, the ALJ held a new hearing on May 15, 2012, and in a decision dated July 26, 2012, found Plaintiff not disabled as defined under the Act through the date of her decision. R. 22-32. Plaintiff filed this action for judicial review on August 28, 2013. Doc. 1.

### B. Medical History and Findings Summary

Plaintiff was born in 1985 and was twenty-seven years old on the date of the ALJ's decision. R. 192. Plaintiff has a high school education, having obtained her GED (R. 218), but no past work experience at a sufficient level to constitute substantial gainful activity (R. 74).

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of pain in her hands, neck, back, knees, feet; headaches; as well as bipolar[1] disorder and depression. R. 51, 68-69. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from bipolar disorder, carpal tunnel syndrome, obesity, and neck and lumbar strain status post motor vehicle accident, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 24. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work. Because Plaintiff's past work was not at the substantial gainful activity level, the ALJ treated Plaintiff as having no past relevant work (per the AC's direction). R. 30. Considering Plaintiff's vocational

---

[1] Plaintiff also alleged that she suffered from schizophrenia (R. 69), but this diagnosis is not supported by the medical records.

profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as produce weigher, housekeeper, fast food worker, and garment bagger. R. 31. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 32.

Plaintiff now asserts four points of error. First, she argues that the ALJ erred by failing to fully and fairly developing the record when she failed to obtain all of Plaintiff's medical records. Second, she claims the ALJ erred by finding she had the RFC to perform light work. Third, Plaintiff contends the ALJ erred in evaluating her credibility and improperly applying the pain standard. Fourth, she argues that the ALJ erred in determining Plaintiff could perform other work in the economy given her limitations. For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *Crawford v. Commissioner*, 363 F.3d 1155, 1158 (11th Cir. 2004), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Crawford*, 363 F.3d at 1158; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.

2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (quotations omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   Development of the record in determining Plaintiff's RFC

Plaintiff argues that the ALJ erred by failing to develop the record when she failed to obtain all of Plaintiff's medical records. Plaintiff contends that the ALJ erred in failing to fully address the opinion provided by Plaintiff's treating physician, Dr. Brooks, and in improperly discounting the opinion of the consultative examiner, Dr. Marrero. She also argues that the ALJ improperly made her own medical determination regarding Plaintiff's mental health impairments.

-4-

The ALJ has a duty to fully and fairly develop the record. *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Where an unrepresented claimant has not waived the right to retained counsel[2], the ALJ's obligation to develop a full and fair record rises to a special duty. *See Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997). "However, there must be a clear showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Id*.

Plaintiff contends that the ALJ erred by failing to request the records from Park Place Behavioral Center (R. 67-68) after Plaintiff mentioned during the May 15, 2012 hearing that she was no longer receiving treatment at Lakeside, but had been seen at Park Place Behavioral Center. R. 68. Plaintiff contends that, at the time of the hearing, she was not aware that updated medical records had not been ordered for her. R. 66. The ALJ explained that the last records she had for Plaintiff were from 2010, but at the end of the hearing "if you give us the name of the doctors you've seen [since 2010] . . . then we can order those records for you"; Plaintiff agreed. R. 67.

Plaintiff now argues she was prejudiced by the ALJ's failure to obtain the Park Place records because the only records obtained were from Oscar Bentinganan, M.D., of Nandra Family Physicians (R. 36, 103, 484-98), which comprised only fifteen pages of additional evidence obtained after the first hearing; the vast majority of the records were from 2010 or earlier, even though Plaintiff's second hearing took place in 2012. Plaintiff argues that post-2010 medical evidence should have been obtained from Plaintiff's treating physician, Dr. Brooks, and records should have also been requested from Park Place Behavioral because Plaintiff indicated that was her current source of mental health treatment; the lack of such records explains why, as the ALJ noted: "Nandra Family Physicians and Dr. Bentinganan do not show any complaints of depression." R. 30.

---

[2]Plaintiff waived her right to a representative at both hearings. R. 40, 143, 171.

The Commissioner argues that Plaintiff voluntarily waived her right to representation (R. 65-66) and failed to show that she was clearly prejudiced by the ALJ's development of the record, nor are there any evidentiary gaps that resulted in unfairness or clear prejudice to Plaintiff. The Commissioner contends that ALJ's actions reveal that she attempted to develop the medical records to the extent possible (R. 67) in that she asked Plaintiff from whom she was receiving treatment, she attempted to obtain additional records, and she planned to hold the record open for over two months after the hearing to receive the records. R. 67.

The ALJ did obtain some additional medical records which, as the Commissioner points out, were presumably received in response to the ALJ's request for records after the hearing. R. 484-98. The ALJ apparently had Plaintiff write out the information for her at the end of the May 15, 2012 hearing, because a statement in Plaintiff's handwriting in the Record indicates Plaintiff was receiving treatment from Dr. Jasvendar Nandra at Family Physicians on North Hiawassee Road. R. 286 (Exhibit 15E dated 5/15/12 according to the Court Transcript Index prepared by the SSA). Although there was plenty of space on the same page, Plaintiff failed to list Park Place Behavioral Center. The ALJ was obligated to retrieve records from the sources Plaintiff indicated, but she failed to list Park Place Behavioral as a provider. The ALJ cannot retrieve unidentified records.

Moreover, correspondence to the Appeals Council dated October 2, 2012 from Plaintiff's counsel at the administrative level indicated that Plaintiff was receiving treatment for depression from a place identified as Accurate Research, but those records are also not contained in the Record or provided by Plaintiff's representatives. *See* R. 291. The ALJ's decision in this respect, even without the Park Place Behavioral records, was based on substantial evidence.

Turning to Plaintiff's RFC, Plaintiff argues that, despite the ALJ's acknowledgment of Plaintiff's treatment from Dr. Brooks, she erroneously failed to analyze or weigh Dr. Brooks' opinion that Plaintiff was "totally disabled." R. 353. Plaintiff contends that despite the ALJ's mention of Dr.

Brooks' treatment note indicating that Plaintiff was "totally disabled since May 20, 2007" (R. 27), the ALJ erred in failing to further analyze or discuss this opinion. The Commissioner contends the supposed July 2008 "opinion" from Dr. Brooks was not discussed because it was nothing more than a reflection of Plaintiff's subjective statements, and was merely a recitation of Plaintiff's reporting of her pain history in response to a questionnaire entitled the "Patient Comfort Assessment Guide." R. 353.

The Court agrees that Dr. Brooks is merely restating Plaintiff's answers to the Patient Comfort Assessment Guide in which she indicated she was "totally disabled since May 20, 2007," along with other self-reported symptoms at the office visit on July 24, 2008; Dr. Brooks did not even begin treating Plaintiff until March 25, **2008**, immediately after her car accident on March 24, 2008. R. 353, 362-69. At the time, Plaintiff complained of headaches, neck pain with stiffness, bilateral arm pain, bilateral shoulder pain, bilateral hand numbness and tingling, bilateral finger numbness and tingling, mid back pain and stiffness, abdominal pain from seatbelt trauma, low back pain and stiffness, and bilateral leg pain. R. 362-63. After a thorough physical examination, Dr. Brooks diagnosed Plaintiff with post-traumatic occipital neuralgia, cervical disk syndrome, thoracic strain, lumbar disk syndrome; and right posterior innominate somatic dysfunction. R. 367.

From April to September 2008, Plaintiff returned to see Dr. Brooks for treatment of neck and low back pain, as well as pain that radiated into her hands. R. 358-61. An MRI of her cervical spine "revealed reversal of the normal cervical lordosis, consistent with muscle spasm," "a herniated disk present at the C4-5 and C5-6 contacting the thecal sac and causing flattening of the spinal cord at these levels," and "moderate canal stenosis," with decreased range of motion in her cervical spine, and shoulder and tenderness with  muscle rigidity of the low back and lumbosacral spine with decreased range of motion. R. 350-59. Plaintiff described her pain as "a dull aching pain associated with shooting, sharp pain into the shoulder and arms, stiffness, and limited movement of the neck."

R. 350-51, 354. Plaintiff also described her bilateral wrist pain and stiffness, and low back pain that radiated to the back of both legs. R. 350-54. Upon physical examination, Plaintiff had muscle spasms in her cervicothoracic and lumbar spine; pain that radiated into her shoulder; bilateral wrist tenderness; positive Tinel's and Phalen's sign bilaterally; multiple trigger points in the lumbar fascia; spastic rigidity bilaterally in the sacrospinalis musculature; and tenderness upon palpation of the sacral bursal region. R. 350-55.

As the Commissioner points out, Dr. Brooks' treatment records do not include any other notations indicating or suggesting that he believed that Plaintiff was permanently "totally disabled," as the term is defined under the Social Security Act. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1505. Plaintiff cites some of Dr. Brooks' findings that reflect she had limitations, such as MRI results showing reversal of the normal cervical lordosis in the cervical spine, consistent with muscle spasm, a herniated disk present at the C4-5 and C5-6, and moderate canal stenosis; and nerve conduction study results showing Plaintiff suffered from bilateral carpal tunnel syndrome; trigger points, muscle spasms; and tenderness. R. 357-58; R. 340-60. Plaintiff omits any discussion, however, of Dr. Brooks' ultimate findings from his Medical Impairment Report dated October 9, 2008. R. 338-49.

On October 9, 2008, after 3 months of treatment, Dr. Brooks diagnosed Plaintiff with a 12% whole body permanent impairment: 6% from a cervical herniated disk, resolved radiculopathy; 2% from thoracic strain; 2% from lumbar strain, chronic non-specific low back pain; and 2% from carpal tunnel syndrome. R. 347. Dr. Brooks opined Plaintiff would continue to require ongoing medical care consisting of short courses of physical therapy and medication managmeent mainly due to anticipated exacerbations of her condition; she should continue muscle strength and flexibility exercise and education for correct postural improvement and lifting, as well as avoiding strenuous activities. He also did not recommend surgery for her carpal tunnel syndrome. R. 347. Because it was

unnecessary to discuss in any depth Dr. Brooks' notation that Plaintiff "was disabled since March 2007" the ALJ accurately reflected Dr. Brooks' treatment notes and his ultimate opinion that Plaintiff's whole body impairment was 12%. R. 27-28.

Plaintiff also contends that the ALJ erroneously discounted the opinion of the consultative examiner, Dr. Marrero and substituted her own opinion. Dr. Marrero, examined Plaintiff one year after the car accident, on April 16, 2009, and limited Plaintiff's lifting to 5-10 pounds. R. 430. The ALJ determined, consistent with Dr. Marrero, that Plaintiff could lift 10 pounds frequently, "but based on her activities of daily living, including taking care of her small child, she could lift 20 pounds occasionally." R. 30. Plaintiff argues that the ALJ's rejection of Dr. Marrero's opinion and substitution of her own opinion was improper because the ALJ essentially acted as a medical expert and constructed her own idea of how much weight Plaintiff could lift and carry. She also argues the ALJ's assertion that she was capable of carrying her own children was contradicted by Plaintiff's testimony, in response to whether she could lift 20 pounds occasionally, that she was unable to pick up her one-year old child. R. 49.

The Commissioner argues that the ALJ did not diagnose any conditions, provide treatment, or do anything ordinarily done by a doctor. but merely did her duty of considering the medical and other evidence of record in assessing Plaintiff's RFC, which is the responsibility of the ALJ, not a physician. Doc. 19 (citing 20 C.F.R. §§ 404.1513(b), 404.1527, 404.1545, 416.913(b), 416.927, 416.945, 416.946(c). The Commissioner contends that the opinions of Dr. Marrero, as the consultative examiner, were not entitled to controlling weight because he only saw Plaintiff once and was not entitled to special deference as a one-time examiner. R. 427-30. The Commissioner also argues that Dr. Marrero's opinion that Plaintiff should be limited to lifting/carrying five to ten pounds "due to the numbness and decreased motor strength on exam" (R. 430) was inconsistent with his own findings which revealed 5/5 motor strength in her upper extremities, 4/5 bilateral grip with

questionable effort, and limitations due to Plaintiff's advanced stage of pregnancy, all of which would not have prevented her from performing substantial gainful activity for a continuous period of not less than twelve months. R. 429-30.

In determining the Plaintiff's RFC, the ALJ was entitled to consider Plaintiff's activities of daily living, and discount Plaintiff's testimony about her lifting abilities[3]. 20 C.F.R. §§ 404.1529; 416.929. Dr. Marrero's examination report, completed one year after her car accident, noted Plaintiff had normal range of motion in all joints, and no spasms or tenderness in the neck. R. 429. Plaintiff complained of lumbar pain but, as Dr. Marrero noted, the May 2008 MRI of the lumbar spine showed no focal disc disease or spinal stenosis, and only mild facet joint arthropathic changes; the cervical spine x-ray from March 25, 2009 was negative and the EMG reported no cervical radiculopathy. R. 427. Dr. Marrero took into consideration that Plaintiff was 8.5 months pregnant, noting "range of motion is essentially normal in all the joints except she has some decrease in the lumbar flexion due to the pregnancy." R. 429. He also noted that Plaintiff had "no significant paravertebral muscle spasm" and normal 5/5 motor strength in the upper extremities (R. 429), which was inconsistent then with his finding that she was limited to 5-10 pounds lifting "due to numbness and *decreased* motor strength," which he apparently adopted from the earlier records of examinations done closer to Plaintiff's car accident, and not his own examination R. 430 (emphasis added). Also inconsistently, Dr. Marrero noted "with regards to manipulative limitations she was able to reach, handle, feel, grasp and finger without difficulty," and imposed no limitations. R. 430. He clearly took into consideration her pregnancy – a temporary condition – finding "due to pregnancy, she may have difficulty repeatedly bending, stooping, and crouching." R. 430. The ALJ's partial discounting of Dr. Marrero's

---

[3]As the Court discusses in more detail below, the ALJ's discounting of Plaintiff's statements concerning her limitations is based on substantial evidence. Plaintiff had a one-year old child who undoubtedly weighed more than 10 pounds and very likely more than 20 pounds. *See* Doc. 19 at 19 (citing average weigh of a fifteen month old child as between 23 and 24 pounds). Plaintiff testified that she could not reach down and pick her up (R. 49), but elsewhere the records noted that she was a single parent with three kids separated from her fiance. R. 477.

-10-

opinion to the extent he included temporary limitations from Plaintiff's very advance pregnancy was based on substantial evidence.

Plaintiff also argues that the ALJ improperly made her own medical findings, rather than rely on the medical record, in determining Plaintiff's mental impairments. The ALJ noted that a state agency psychologist determined that Plaintiff had no medically determinable mental impairment, and that "progress notes from both Nandra Family Physicians and Dr. Bentinganan do not show any complaints of depression. The undersigned finds that due to her mood swings that she would be limited to performing simple routine tasks on a sustained basis." R. 30.

Plaintiff argues that the ALJ erroneously acted as a medical expert and constructed her own residual functional capacity for Plaintiff's mental capacities, in violation of relevant case law. She also argues that whether or not Nandra Family Physicians mentioned depression is irrelevant to the case because Plaintiff was diagnosed with bipolar disorder by Lakeside Behavioral Healthcare (R. 481), and the ALJ recognized bipolar disorder as a medically-determinable, severe impairment at Step 2 of the agency review process (R. 24). Thus, Plaintiff argues, she still deserved to have a medical doctor determine the limitations she experienced pursuant to her bipolar disorder, and not have the ALJ "come up with her own opinion as to what Plaintiff is mentally capable of." Plaintiff further contends that the ALJ also had two other options available to her. Rather than creating her own opinion regarding how Plaintiff's mental impairments affected her work-related abilities, the ALJ should have either ordered the records from Park Place Behavioral, which might have contained a medical source opinion (R. 67-68) and/or ordered a psychological consultative examination. She argues the case must be remanded because "the record in its current state is devoid of any medical opinion regarding how Plaintiff's mental impairments affect her or how they might affect her work-related abilities," thus, there is no document that definitively states that Plaintiff is capable of "simple routine tasks on a sustained basis," as the ALJ suggests (R. 30).

-11-

The Commissioner argues that the ALJ actually gave Plaintiff the benefit of the doubt by limiting her to simple, routine tasks on a sustained basis rather than adopting the state agency psychologist's opinion that she did not have any severe mental limitations. Because the ALJ's RFC finding is more restrictive than if the ALJ had adopted the state agency psychologist's opinion, the Commissioner argues, remand to have an ALJ further discuss or weigh the state agency psychologist's opinion is not required and would serve no practical purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources. Doc. 20 at 8 (citing cases). The Commissioner also contends that substantial evidence supported the ALJ's RFC finding which addressed Plaintiff's mental limitations (R. 26).

Here, the ALJ noted Plaintiff had no mental health treatment until April 2010, and even though she was diagnosed with bipolar disorder in July 2010, she did not return to Lakeside Alternatives:

> A state agency psychologist (Exhibit 5F) had the opportunity to evaluate the medical evidence and opined that there was no medically determinable mental impairment. The state agency, however, did not have the opportunity to evaluate the evidence from Lakeside Alternatives indicating that she was diagnosed with bipolar disorder. However, the claimant had not sought mental health treatment until April 2010. On the initial visit, her global assessment of functioning was measured at 60, indicating just mild to moderate limitations in social, occupational and school functioning. She was not prescribed medications until June 2010. The claimant did not return after she signed the Treatment Plan update in July 2010. The progress notes from both Nandra Family Physicians and Dr. Bentinganan do not show any complaints of depression.
>
> The undersigned finds that due to her mood swings that she would be limited to performing simple routine tasks on a sustained basis (Social Security Ruling 96-6p).

R. 30.

Lakeside Alternatives did diagnose Plaintiff with bipolar disorder but she stopped receiving treatment there in July 2010 (R. 465), as the ALJ stated. While she was receiving treatment, the Lakeside records indicated her memory was good for remote and recent events and her concentration was good although her mood/affect was depressed. R. 467, 470. As discussed above, while it is true

that Plaintiff told the ALJ she had sought treatment at Park Place Behavioral[4], she failed to include a mental health treating source in her updated list (R. 286) who could provide updated mental health records.

The ALJ was also not required to order a consultative examination because the record in this case contained sufficient evidence for her to make an informed decision. As the Commissioner argues, Plaintiff has only speculated that a consultative examination would reveal evidence that could possibly support her claim, and that is not a sufficient basis for requiring an ALJ to order a consultative examination. See 20 C.F.R. §§ 404.1519a, 416.919a; *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999). The ALJ's determination of Plaintiff's mental limitations was based on substantial evidence.

### B. Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating her credibility and pain in her back, knees, hands, and feet by finding her statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment determined by the ALJ[5]. R. 29.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

---

[4]Plaintiff's representative mentioned another treatment provider, Accurate Research; but those records have not been provided. R. 291.

[5]The Commissioner does not directly address this point.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, she clearly was aware of the governing standards for evaluating subjective complaints because she cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 26. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam)(ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards by determining that Plaintiff had an objective medical condition that could give rise to the alleged symptoms, or otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that she had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that she had to articulate a reasonable basis for her determination. In that respect, immediately after discussing Plaintiff's RFC, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment.
>
> The claimant's subjective complaints and symptoms, including her allegations of pain and limitations have been carefully compared to the other reports, testimony and the medical evidence. The claimant's testimony and other reports show that she lives a fully functional lifestyle, which is consistent with the medical evidence. The claimant is able to take care of her personal needs. She is able to get her children ready for

> school. She is able to go to the grocery store. She talks on the phone. There are no reported side effects from medications. Activities and reports such as these are inconsistent with her allegations of incapacitating limitations or pain. This is not to minimize the medical impairments demonstrated in the record. The claimant does have impairments that limit her activities with heavy lifting and to performing simple routine tasks. However, the clinical findings result from these impairments does not appear of producing pain or limitations of incapacitating proportions. Accordingly, the undersigned finds that the claimant's allegations and subjective symptoms beyond what could be expected considering the objective laboratory and clinical findings (Social Security Ruling 96-7p).

R. 29-30.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff argues that the ALJ erred in the pain determination because the MRI of Plaintiff's cervical spine revealed reversal of the normal cervical lordosis consistent with muscle spasm, and herniated disk present at the C4-5 and C5-6 contacting the thecal sac and causing flattening of the spinal cord at these levels, and "moderate canal stenosis; as well as a nerve conduction study showing bilateral carpal tunnel syndrome. R. 357-58.

The evidence Plaintiff cites is from shortly after her car accident in March 2008, yet the consultative examination by Dr. Marrero, conducted eighteen months later in October 2009, showed normal range of motion in all joints, and no spasms or tenderness in the neck; results of the MRI of the lumbar spine showed no focal disc disease or spinal stenosis, and only mild facet joint arthropathic changes; the cervical spine x-ray was also negative and the EMG reported no cervical radiculopathy. R. 427. The ALJ was entitled to rely on the most recent examination of Plaintiff's physical condition.

Plaintiff also argues that, although the ALJ that Plaintiff had testified to "bad episodes of

bipolar and schizophrenia[6]," the ALJ failed to explain why she did not fully credit Plaintiff's testimony regarding these alleged mental impairments. Plaintiff points to repeated diagnoses of bipolar disorder and two GAF scores of 50, as well as rapid speech, and depressed mood, and her reported hallucinations at night. R. 467-71, 481.

The ALJ found Plaintiff's testimony and other reports showed that she lived a fully functional lifestyle, in that she was able to take care of her personal needs, get her children ready for school, go to the grocery store, and talk on the phone; all without reporting side effects from medications. Plaintiff also inconsistently stated to her healthcare providers that she was a compulsive cleaner (R. 474), that she was having to cope as a "single mom with three kids" (R. 477 May 2010) and she was separated from her boyfriend (R. 480- April 2010), yet told the ALJ at both hearings that although she lived with her parents (and her three children), her fiancé was "basically her caregiver," who helps her 100% with dressing and bathing, and she has to have someone with her "constantly." R. 42, 52, 256. She also represented to healthcare providers that she drove a car (R. 476), even though she told the ALJ that she did not drive because her license had been suspended for non-payment of tickets. R. 53. Plaintiff told the mental health provider that she was in legal trouble as an accessory to a theft, and was placed on probation until September of 2010. R. 473. These activities are inconsistent with Plaintiff's allegations of being incapacitated to the point she spends 24 hours of the day in bed and needs help to take a bath, dress, and eat. R. 255. At her visit to Nandra Family Physicians in April and September 2011, Plaintiff reported feeding "well with minor complaints." R. 487, 493. In this case, the ALJ offered specific reasons for discrediting Plaintiff's subjective complaints, including inconsistencies between Plaintiff's reports and the examination findings, as well as inconsistencies between her statements and her activities of daily living. These are factors the ALJ is directed to

---

[6]There is no diagnosis of schizophrenia in the medical records.

-16-

consider. 20 C.F.R. §§ 404.1529; 416.929. Accordingly, the ALJ's reasons for discounting Plaintiff's credibility and subjective statements of pain are supported by substantial evidence.

### C. Step 5 – performance of other work in the economy

Plaintiff argues that the ALJ erred at Step 5 because the evidence suggests that Plaintiff is not capable of performing the positions the ALJ found Plaintiff could perform, *i.e.*, fast food worker, produce weigher, housekeeper, and garment bagger. She argues the ALJ erred in finding that she could perform the job of fast food worker, which requires "constant" handling (according to the Dictionary of Occupational Titles), and is inconsistent with her RFC having "frequent limitations" in handling and fingering. R. 26. Even assuming *arguendo* that Plaintiff is correct on this point[7], the ALJ found three other positions, any of which constitute sufficient alternative work in the national economy to support the ALJ's determination that Plaintiff is not disabled.

In determining Plaintiff's RFC, the ALJ partially discounted Plaintiff's statements regarding her stated manipulative limitations in her hands and found that Plaintiff would have "frequent limitations with handling and fingering." R. 26. Plaintiff argues that this language suggests that since Plaintiff has "frequent limitations" – as opposed to being "frequently limited to"– Plaintiff is only capable of performing those actions, at most, on an *occasional* basis. Because the Dictionary of Occupational Titles indicates that a produce weigher, housekeeper, and garment bagger[8] must all frequently handle and because Plaintiff has "frequent limitations," she argues that she would be unable to perform the positions of produce weigher, housekeeper, and garment bagger since they require greater physical abilities than Plaintiff is capable of performing[9].

---

[7] The Commissioner failed to address the point in the Memorandum in Support. Doc. 20.

[8] The garment bagger must also frequently finger objects.

[9] Given the Court's rulings above, finding the ALJ had not erred in the RFC determination and in analyzing Plaintiff's credibility, the Court need not address her argument that the ALJ's Step 5 determination was erroneous on these bases. Doc. 19 at 24.

-17-

Plaintiff's contention as to the unclear wording of the limitation is of no moment. At the May 12, 2012 (second) hearing, in the hypothetical to the VE, the ALJ clearly stated the limitation as "limited to only frequent handling and fingering because of carpal tunnel syndrome." R. 74. The second VE testified that with this limitation, Plaintiff could perform produce weigher, housekeeper, and garment bagger. R. 74. At the August 20, 2010 (first) hearing, the ALJ had asked a similar hypothetical to the first VE which was identical in the hand restriction: "Same claimant but because of carpal tunnel syndrome, she's *limited to frequent use* of the hands." R. 58. It is clear from the ALJ's phrasing that she intended to reduce Plaintiff's use of her hands from "unlimited" or "constantly" to only "frequent" use of the hands; "frequently" is defined in the SSA forms as an activity performed between one-third and two-thirds of the time. *See, e.g.*, R. 434 (listing limitations as "frequently, occasionally, and never" for certain limitations[10]); *Culp v. Astrue*, No. 11-1267-SAC, 2012 WL 3443335, *6 (D. Kan. Aug. 14, 2012) ("According to the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO) (U.S. Dept. of Labor, 1993 at C–3), 'occasionally' involves an activity existing up to 1/3 of the time, 'frequently' involves an activity existing from 1/3 to 2/3 of the time, and 'constantly' involves an activity or condition that exists 2/3 or more of the time."); *Gallegos v. Barnhart*, 99 Fed. Appx. 222, 224 (10th Cir. June 2, 2004) (finding that "repetitive" means the same thing as "constant," or 2/3 or more of the time). In a similar case, where a physician had limited a claimant with carpal tunnel syndrome to "no rapid repetitive movement," it was reasonable for the ALJ to conclude that the limitation would preclude the claimant from constant fingering but would not preclude him from frequent handling and fingering. *Culp*, 2012 WL 3443335 at *6; *Sutherland v. Astrue*, No. 08-8610-MLG, 2009 WL

---

[10]For manipulative limitations, the choices are "limited and "unlimited," however, the professional giving the opinion is then asked to define the limitations, which may include "frequent." R. 435.

3046021 (C.D. Cal. 2009) (affirming the ALJ's finding where plaintiff was limited because of mild bilateral carpal tunnel syndrome to "frequent fingering and handling of objects").

Here, in determining Plaintiff's manipulative limitations, the ALJ was entitled to rely on the examination report of the consultative examiner, Dr. Marrero, who opined "with regards to manipulative limitations, [Plaintiff] was *able to reach, handle, feel grasp, and finger without difficulty*." R. 430 (emphasis added). He noted during the exam that Plaintiff had normal muscle bulk and tone, no evidence of atrophy and the motor strength was 5/5 with bilateral grip strength of 4/5, but he questioned her effort on the exam. R. 429. Relying on Dr. Marrero's report, the ALJ gave Plaintiff some credit for a reduced bilateral grip strength and reduced her from constant or unlimited handling and fingering to "frequent handling and fingering," a limitation which other courts have affirmed as adequately accounting for limits from mild carpal tunnel syndrome. Accordingly, the ALJ's opinion was based on substantial evidence.

## IV.   CONCLUSION

The record in this case shows that Plaintiff does not enjoy full health and that her lifestyle and activities are affected by her ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), The Clerk of the Court be directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on July 28, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

Case 6:13-cv-01331-ACC-DAB   Document 24   Filed 07/29/14   Page 20 of 20 PageID 633